IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARTEMIO DIAZ-CASTREJON and<br>JUAN CARLOS HUERTA-TORRES,<br><br>Defendants. | Case No.   23-CR-073-JFH |

## OPINION AND ORDER

Before the Court is a Motion to Suppress Evidence [Dkt. No. 57] and a Motion to Suppress Identification [Dkt. No. 58] filed by Defendant Juan Carlos Huerta-Torres ("Defendant Huerta-Torres"). Defendant Artemio Diaz-Castrejon ("Defendant Diaz-Castrejon") filed a Joinder in Defendant Huerta-Torres' Motion to Suppress Evidence ("Joinder") [Dkt. No. 57]. Dkt. No. 59. The United States of America ("Government") filed responses to both pending motions to suppress. Dkt. Nos. 68, 69. For the following reasons, the Motion to Suppress Evidence [Dkt. No. 57], Motion to Suppress Identification [Dkt. No. 58], and Joinder [Dkt. No. 59] are DENIED.

## BACKGROUND

### A. The Investigation

In September 2022, the Tulsa Police Department DEA Task Force began an investigation after Officer Payton Laskey "received information from a confidential informant about a Mexico based drug trafficking organization operating in the Tulsa area." Dkt. No. 68 at 1. The confidential informant introduced Officer Laskey and other undercover investigators to the drug trafficking organization under the guise of being new customers, and provided Officer Laskey with a phone number used within the drug trafficking organization to purchase narcotics. *Id*. Officer Laskey began using the phone number to arrange controlled purchases of narcotics. *Id*. at 2.

In October 2022, Officer Laskey used the phone number to inquire about purchasing heroin. Dkt. No. 68 at 2. He was instructed to go to a certain location and to text the phone number when he arrived. *Id*. Shortly after sending the text, "a Hispanic male driving [a Chevrolet] Impala [(license plate MHS591)] showed up and sold Officer Laskey three small balloons containing heroin." *Id*. Following this purchase, Officer Laskey sought and obtained a Tulsa County search warrant to place a GPS tracking device on the Impala. *Id*. Using data obtained from the GPS, officers conducted surveillance and determined that the Impala was associated with a specific residence in Tulsa, Oklahoma. Dkt. No. 68 at 2. A search warrant was obtained for the residence and, upon execution of the search warrant, trafficking amounts of fentanyl, digital scales, baggies, heroin, and over $7,000 cash were recovered from inside the residence. *Id*. Additionally, two individuals inside the home during the execution of the search warrant admitted to working for the drug trafficking organization and were arrested. *Id*.

Again, on January 10, 2023, Officer Laskey used the phone number to inquire about purchasing heroin. *Id*. During this controlled buy, Officer Laskey "purchased heroin from a Hispanic male driving a Kia Soul [(license plate MHT882)]." Dkt. No. 68 at 2-3. Eight days later, on January 18, 2023, Officer Laskey again purchased heroin from the same individual driving the Kia. *Id*. at 3. This time, investigators followed the vehicle from the location of the controlled buy. *Id*. Investigators noted that the manner of driving was consistent with that of individuals involved in narcotics trafficking. *Id*. Eventually, the Kia backed into the garage of a home located at 15404 East 90th Street North, Owasso, Oklahoma. Dkt. No. 68 at 3.

A short time later, Officer Laskey drove by 15404 East 90th Street North and recognized a Honda Odyssey backed into the driveway, which appeared to be the same vehicle used to sell Officer Laskey heroin and fentanyl (a Honda Odyssey license plate MHW325) in September 2022.

*Id.* As part of that controlled buy, investigators followed the Honda Odyssey, but lost surveillance in the same neighborhood as 15404 East 90th Street North. *Id.*

### B. The Affidavit

Officer Laskey submitted an affidavit seeking a search warrant for 15404 East 90th Street North. Dkt. No. 68 at 3; Dkt. No. 57-1. The affidavit outlined the investigation, including five pages of facts in support of probable cause. Dkt. No. 57-1 at 2-6. In particular, the affidavit explained that Officer Laskey believed 15404 East 90th Street North was being used by the drug trafficking organization based on the presence of the Kia Soul and Honda Odyssey at the residence around the time of the controlled buys. *Id.* at 4-5. Officer Laskey stated that based upon his training experience, he was aware that drug trafficking organizations often use multiple residences; and individuals involved typically store additional quantities of illegal substances in their residences to avoid law enforcement detection. *Id.* at 5. Because Officer Laskey had purchased illegal substances from individuals driving both the Kia Soul and Honda Odyssey, and those two vehicles had been observed at 15404 East 90th Street North near the time of the controlled buys, Officer Laskey stated that he had reason to believe that illegal substances were present at the residence. *Id.* Based upon Officer Laskey's affidavit, Rogers County District Court Judge Terrell S. Crosson issued a search warrant for 15404 East 90th Street North. Dkt. No. 57-1.

### C. The Identification

The search warrant for 15404 East 90th Street North was executed on January 26, 2023 by Officer Laskey and other officers. Dkt. No. 58 at 1. As a result of the search, fentanyl, heroin, and approximately 70 pounds of methamphetamine were found hidden in the residence. Dkt. No. 68 at 3; Dkt. No. 58 at 4. Defendant Diaz-Castrejon and Defendant Huerta-Torres were also found inside the residence. Dkt. No. 68 at 3. After the search was concluded, Officer Laskey prepared

a report. Dkt. No. 58 at 4-5. The report stated that Defendant Huerta-Torres was located in the residence, but did not state whether Defendant Huerta-Torres was involved in any of Officer Laskey's previous controlled buys. *Id.*

## DISCUSSION

### A. Search Warrant Evidence

Defendant Huerta-Torres' Motion to Suppress Evidence asks the Court to suppress all evidence arising from the search of 15404 East 90th Street North, arguing that the affidavit in support of the search warrant "provided no facts establishing any drug distribution activity from [15404 East 90th Street North]." Dkt. No. 57 at 1. Defendant Diaz-Castrejon joins in Defendant Huerta-Torres' Motion to Suppress Evidence without offering any additional argument. Dkt. No. 59.

"To be constitutional, a search warrant must issue only upon probable cause." *United States v. Burns*, 624 F.2d 95, 99 (10th Cir. 1980). "This requires more than mere suspicion but less evidence than is necessary to convict." *Id.* To establish probable cause to justify a search of a home, an affidavit in support of a search warrant "must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral–Corral*, 899 F.2d 927, 937 (10th Cir. 1990).

A magistrate judge issuing a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). In making this determination, the magistrate judge "may draw

reasonable inferences from the material provided in the warrant application." *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998).

"A reviewing court should accord great deference to a magistrate's determination of probable cause." *United States v. Reed*, 195 F. App'x 815, 822 (10th Cir. 2006). The Court's duty is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39. In determining whether an affidavit supports a finding of probable cause, the Court must review the affidavit as a whole and look to the totality of the information contained therein. *United States v. Glover*, 104 F.3d 1570, 1578 (10th Cir.1997). Additionally, an evidentiary hearing on a motion to suppress is only required when the motion to suppress "raises factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Glass*, 128 F.3d 1398, 1408-09 (10th Cir. 1997) (citing *United States v. Chavez–Marquez*, 66 F.3d 259, 261 (10th Cir.1995)). Here, Defendants do not dispute the facts as stated in Officer Laskey's affidavit, but rather argue their legal significance. Therefore, no evidentiary hearing is required.

Defendants argue that the affidavit does not provide a sufficient nexus between the drug trafficking operation and 15405 East 90th Street North. Dkt. No. 57 at 8-11. Specifically, Defendants argue that because Officer Laskey stated that drug trafficking operations frequently use multiple residences, "[a]ny magistrate reading this language could only conclude that the drivers do not store large amounts of narcotics at their residences." *Id*. at 9. Defendants further state that "[t]his highly organized heroin trafficking operation no doubt has figured out that its drivers might be followed back to their residences and does not want to risk large amounts of heroin or other illegal drugs getting found at those residences." *Id*. Defendants seem to argue that

5

because the Kia Soul and the Honda Odyssey were observed at 15404 East 90th Street North around the time of controlled buys, 15404 East 90th Street North could be the drivers' residence and, therefore, there is not a fair probability that narcotics would be found at 15404 East 90th Street North based on Officer Laskey's statement. *Id*. However, in the very next paragraph, Defendants take issue with the fact that the affidavit did not suggest that the drivers resided at 15404 East 90th Street North, arguing that they could have instead been simply visiting a parent, or a girlfriend, or another customer. Dkt. No. 57 at 10.

Regardless of whether or not Defendants resided at 15404 East 90th Street North, the affidavit provided a sufficient nexus between the drug trafficking operation and 15405 East 90th Street North. First, when reviewing the affidavit as a whole, as the Court must, it is clear that based upon Officer Laskey's training and experience, he had learned that drug traffickers often used multiple residences, including their own residences, to store illegal substances. Dkt. No. 57-1 at 5. Therefore, whether or not Defendants resided at 15405 East 90th Street North is not outcome determinative.

Officer Laskey conducted multiple controlled buys from individuals driving the Kia Soul and the Honda Odyssey. Dkt. No. 57-1 at 3-5. These controlled buys were a result of a confidential informant's introduction of Officer Laskey to the drug trafficking organization and were always initiated by using the same phone number provided by the confidential informant. *Id*. Both the Kia Soul and the Honda Odyssey were observed at 15404 East 90th Street North around the time of controlled buys. *Id*. at 4-5. After the controlled buy on January 18, 2023, investigators continued visual surveillance of the Kia Soul. *Id*. at 4. Investigators observed that after the controlled buy, the Kia Soul stopped in the driveway of a residence to meet an individual for less than ten seconds. Dkt. No. 57-1 at 5. The Kia Soul then drove to another neighborhood in Owasso,

Oklahoma where it pulled over to the side of the road to allow the vehicle behind it to pass before continuing on. *Id.* Officer Laskey stated that this behavior was consistent with individuals involved with drug trafficking to ensure that they are not being followed. *Id.* The Kia Soul then backed into the garage at 15404 East 90th Street North and closed the garage door. *Id.* Backing into a garage seems highly unusual behavior for someone visiting another person's residence. Shortly thereafter, a Honda Odyssey, which looked like a vehicle Officer Laskey had interacted with in previous controlled buys, was observed backed into the driveway of 15404 East 90th Street North. Dkt. No. 57-1 at 5. Whether this was Defendants' residence or one of many "multiple residences," a reasonable inference can be drawn that narcotics would be present at 15404 East 90th Street North. Given all the circumstances—the link between the phone number and the drug trafficking organization; the link between the phone number and the Kia Soul and Honda Odyssey; the driving behavior of the Kia Soul after the controlled buy and before arriving at 15404 East 90th Street North; and the presence of the Kia Soul and Honda Odyssey at 15404 East 90th Street North around the time of the controlled buys—a reasonable inference can be drawn that narcotics would be present in 15404 East 90th Street North.

Further, the affidavit included information regarding his interactions in October 2022 with a Chevrolet Impala. Dkt. No. 57-1 at 3. Officer Laskey explained that he conducted controlled buys from an individual in the Chevrolet Impala by using the same phone number that he used in the controlled buys with the Kia Soul and the Honda Odyssey. *Id.* at 3-5. Investigators engaged in surveillance of the Chevrolet Impala determined that the individuals using the Chevrolet Impala were linked to 919 North Troost Avenue, Tulsa, Oklahoma. Execution of a search warrant at 919 North Troost Avenue resulted in the discovery of trafficking amounts of fentanyl, heroin, items associated with narcotics distribution, and over $7,000. Further, individuals in the residence

7

during the search confirmed that they were involved in the drug trafficking organization.

As Defendant Huerta-Torres points out, where possession of contraband or other criminal activity occurs away from a defendant's residence, "additional reliable information in the warrant application must indicate that the contraband will be at the designated premises at the time of the search." *Id*. (quoting *Rowland*, 145 F.3d at 1203). The information regarding the Chevrolet Impala sets forth a pattern of behavior for this particular drug trafficking organization, which increases the inference that narcotics would be present at 15404 East 90th Street North at the time of the search, just as they were at 919 North Troost Avenue.

Defendants make an additional argument that the good faith exception does not apply to save the warrant. Because the Court finds that the search warrant is supported by probable cause, however, the Court need not consider the good faith exception and the analysis ends here. For these reasons, Defendant Huerta-Torres' Motion to Suppress Evidence [Dkt. No. 57] and Defendant Diaz-Castrejon's Joinder in Motion [Dkt. No. 59] are DENIED.

## B. Identification Evidence

Defendant Huerta-Torres' Motion to Suppress Identification asks the Court to suppress any identification by Officer Laskey of Defendant Huerta-Torres as the individual who sold him illegal substances in the controlled buys during the investigation. Dkt. No. 58 at 1, 10. Specifically, Defendant Huerta-Torres argues that any identification of Defendant Huerta-Torres in connection with the controlled buys on January 10 and January 18, 2023 "constitutes an impermissible show-up" of Defendant Huerta-Torres who was present at 15404 East 90th Street North at the time the search warrant was executed." *Id*. at 1. In other words, Defendant Huerta-Torres argues that because Officer Laskey did not indicate that he had previously purchased illegal substances from Defendant Huerta-Torres at the time the search warrant was executed or later when he was writing

his report, he should not be permitted to make such an identification at trial.

In support of this argument, Defendant relies on *Manson v. Braithwaite*, 432 U.S. 98 (1977). However, the Court finds that *Manson* is inapplicable here. As explained in *Manson*, a primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place. *Id*. at 112. It is unclear exactly what "unnecessarily suggestive circumstance" Defendant Huerta-Torres suggests occurred here. On one hand, Defendant Huerta-Torres seems to suggest that Officer Laskey's identification of Defendant Huerta-Torres at 15404 East 90th Street North was an unnecessarily suggestive showup. Dkt. No. 58 at 9-10 ("The process used by Officer Laskey makes possible for officers to conduct a search of a residence and fill in the blanks with persons in that house to be named in previous controlled buys . . . ."). On the other hand, Defendant Huerta-Torres states that Officer Laskey did not make any pretrial identification, arguing what he believes Officer Laskey should have done:

> Twice Officer Laskey had the opportunity to tie the Defendant to the man he had seen on January 10 and January 18, 2023 . . . . When he first saw the Defendant . . . during the house search, Officer Laskey would have been expected to say, "I've seen you before," but he did not. Then, when Officer Laskey wrote his initial police report, he similarly failed to make the connection.

*Id*. at 8. Regardless, the execution of a search warrant at a residence is not a showup. Law enforcement was not even aware that Defendant Huerta-Torres would be present at the time the search warrant was executed. If Officer Laskey did "identify" Defendant Huerta-Torres at the time the search warrant was executed, this was nothing more than an eyewitness identification and does not rise to the level of an unnecessarily suggestive circumstance.

Alternatively, Defendant Huerta-Torres seems to suggest that Officer Laskey's in-court identification at trial will be an unnecessarily suggestive circumstance. However, all in-court identifications involve some element of suggestion. *See Perry v. New Hampshire*, 565 U.S. 228,

244 (2012) ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do."). Furthermore, "generally, the question of the suggestiveness or credibility of the in-court identification is to be resolved ultimately by the jury after the defendant has had an opportunity to test the accuracy of an identification through cross-examination." *United States v. Curtis*, 344 F.3d 1057, 1063 (10th Cir. 2003) (citing *United States v. Robertson*, 19 F.3d 1318, 1323 (10th Cir. 1994)). Defendant Huerta-Torres will have the opportunity to cross-examine Officer Laskey at trial regarding any in-court identification.

Because Defendant Huerta-Torres has failed to identify an identification obtained under an unnecessarily suggestive circumstance, the Court cannot screen the evidence to determine whether the identification was reliable under the *Manson* analysis. *See Perry*, 565 U.S. at 232. For this reason, Defendant Huerta Torres' Motion to Suppress Identification [Dkt. No. 58] is DENIED.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Huerta-Torres' Motion to Suppress Evidence [Dkt. No. 57], Defendant Huerta-Torres' Motion to Suppress Identification [Dkt. No. 58], and Defendant Diaz-Castrejon's Joinder in Co-Defendant's Motion to Suppress Search Warrant Evidence [Dkt. No. 59] are DENIED.

DATED this 26th day of April 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE